UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OLIVER M. BOLING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 15-1623 (BAH) |
| ) | Chief Judge Beryl A. Howell |
| ) | |
| UNITED STATES ) | |
| PAROLE COMMISSION *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

The *pro se* plaintiff, Oliver M. Boling, a District of Columbia prisoner currently incarcerated at the Federal Correctional Institution in Estill, South Carolina, instituted this lawsuit against six employees of the United States Parole Commission ("Commission") and a case manager at the Bureau of Prisons ("BOP"), alleging that they engaged in a conspiracy to deprive him of certain constitutional rights and to commit fraud during parole proceedings in January 2005. He seeks equitable relief and monetary damages.

Pending before the Court is the defendants' motion to dismiss the complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defs.' Mot. to Dismiss, ECF No. 14. Upon consideration of the defendants' motion and reply, ECF No. 18, and the plaintiff's opposition, ECF No. 16, and surreply, ECF No. 20, the Court finds that most of the plaintiff's claims are barred by sovereign immunity and *res judicata*, and the remaining personal-

capacity claims are frivolous. Accordingly, for the reasons explained more fully below, the

defendants' motion is granted on those grounds and this case is dismissed.[1]

## I. BACKGROUND

### A. Factual History and Prior Adjudication of the Plaintiff's Claims

The allegations in the prolix complaint are sketchy and difficult to follow but

nevertheless make clear that the claims pertain to events beginning in January 2005, when the

Commission, as the authority over D.C. parolees and supervisees, rescinded the plaintiff's

presumptive parole date of April 9, 2005, and rescheduled him for parole reconsideration in

December 2018 ("15-year setoff"). *See* Not. of Action, ECF No. 14-1 at 4; Compl. at 8-11, ECF

No. 1. These events underlying the plaintiff's instant complaint also prompted his prior actions.

Thus, the detailed history set out below by the United States Court of Appeals for the Tenth

Circuit in the plaintiff's appeal from the District of Kansas' denial of his 2007 habeas petition is

pertinent background to the Commission's actions challenged in the instant complaint.

> Mr. Boling was convicted of sodomy in the District of Columbia in 1976. In
> 1983, he was convicted of assault with a dangerous weapon. At that time, a

---

[1] Resolution of the pending motion on these grounds renders unnecessary consideration of the defendants' more nuanced arguments that the complaint "is untimely" because, "[b]y his own admission, Plaintiff's claims accrued in 2005." Mem. of Pts. & Auth. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem."), at 2, ECF No. 14. This defense of untimeliness is predicated on federal and local statutes of limitations set out at 28 U.S.C. § 2401 and D.C. Code § 12-301, respectively. *See* Defs.' Mem. at 8-10. Although the federal statute of limitations bars civil actions against the United States not "filed within six years after the right of action accrues," the filing time is tolled for "any person under [an undefined] legal disability . . . at the time the claim accrues" by "three years after the disability ceases." 28 U.S.C. § 2401(a). In addition, the defendants assert that the plaintiff's "purported individual-capacity constitutional tort claims" are barred under the District of Columbia's statute of limitations because these claims "were brought more than three years after the events giving rise to them." Defs.' Mem. at 8 (citing D.C. Code § 12-301(8)). The defendants, however, have not addressed either statute's tolling provision. In this regard, the District's provision specifically lists "imprisoned" as a disability that entitles a plaintiff to maintain an action once the disability is removed. D.C. Code § 302(a)(3). From all indications in the record, the plaintiff has been incarcerated since 2005. At least as to the personal-capacity claims, then, the "statute of limitations . . . has not yet begun to run[.]" *Jones v. Kirchner*, 835 F.3d 74, 82 (D.C. Cir. 2016); *see id.* at 81 ("[T]he District tolls the statute of limitations for causes of action that accrue while a plaintiff is imprisoned, beginning at the time of his or her arrest. . . . Tolling stops when the plaintiff is released[.]") (citations omitted)).

D.C. court sentenced Mr. Boling to a prison term of 23 years and 8 months to 71 years and 6 months. In February 1999, the District of Columbia Board of Parole (D.C. Board) released Mr. Boling, subject to a 48-year period of supervision, until June 2047. Within months of Mr. Boling's release, D.C. authorities arrested Mr. Boling after he allegedly struck his wife with a cane and hit her with his fists. Assault charges against Mr. Boling were ultimately dismissed. However, on April 13, 1999, the D.C. Board issued a parole violation warrant, citing Mr. Boling's alleged assault on his wife and failure to abide by all laws as a violation of the conditions of his parole.

Mr. Boling's wife moved to Connecticut and obtained a temporary protective order that prevented Mr. Boling from visiting her. Authorities in Connecticut arrested Mr. Boling later in April 1999 after he initiated another encounter with his wife. As a result of that incident, Mr. Boling was convicted of violating a protective order and disorderly conduct, and a Connecticut court sentenced Mr. Boling to a term of imprisonment of approximately one year. Per the terms of the D.C. Board's April 13, 1999, parole violation warrant, the United States Marshals Service transported Mr. Boling back to the District of Columbia after he completed his Connecticut sentence in February 2000. In July 2000, the D.C. Board revoked Mr. Boling's parole and set a hearing date for reconsideration of Mr. Boling's parole. In July 2001, the D.C. Board transferred Mr. Boling to the custody of the Bureau of Prisons.

In December 2003, the Commission held a hearing at which it considered whether to continue Mr. Boling's imprisonment. Among other things, the Commission took note of Mr. Boling's assault of his wife within two months of his release in 1999. After determining that Mr. Boling should not be paroled at that time, the Commission was faced with the task of setting a new date for reconsideration of Mr. Boling's parole status. The Commission's guidelines calculation yielded a recommended reconsideration date of 48-60 months. However, the Commission concluded that Mr. Boling's return to violent criminal activity indicated that he posed a more serious risk than its guidelines calculations suggested. Accordingly, the Commission's decision, rendered in a Notice of Action dated December 19, 2003 (December 2003 Notice of Action), set a reconsideration date of 72 months.

In March 2004, Mr. Boling filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. His petition challenged the December 2003 Notice of Action. In November 2004, while Mr. Boling's petition was pending before the district court, the Commission held another hearing to reconsider the December 2003 Notice of Action. The Commission considered newly received reports that Mr. Boling had threatened to kill or harm his wife and harm her family on numerous occasions. The Commission also took into consideration the newly reported fact that Mr. Boling had previously attempted to kill his wife by physically attacking her on more than one occasion. In light of this information, the Commission entered a Notice of

> Action, dated January 5, 2005 (January 2005 Notice of Action), which extended Mr. Boling's parole reconsideration date to December 2018. The January 2005 Notice of Action voided the December 2003 Notice of Action.

*Boling v. Mundt*, 261 Fed. App'x 133, 135-36 (10th Cir. 2008).

The Tenth Circuit considered the merits of the plaintiff's claims grounded upon "the decision of [the] Commission to revoke his parole and defer reconsideration of parole beyond the length of time recommended under the Commission's guidelines." *Id*. at 135. Agreeing with the district court, the Tenth Circuit found no merit to the plaintiff's argument that the Commission had violated the *ex post facto* clause by applying its guidelines "rather than the appropriate laws in effect when [Plaintiff] committed his first offense in 1976." *Id*. at 137. That court further found "no legal support" for the plaintiff's argument that the Commission had impermissibly departed upwardly from its guidelines "by considering conduct that did not result in a criminal conviction," and no factual support for the plaintiff's argument that the Commission had "impermissibly 'double counted' his offenses" by using the same information "to make two distinct determinations." *Id*. at 138. The Tenth Circuit suggested that the Commission's finding of a pattern of behavior to warrant a longer re-incarceration period necessarily required consideration of overlapping events, and agreed with the district court "that, in this case, '[t]he Commission [had properly] departed from its guidelines based on the extent, nature, repetition, and timing of [Mr. Boling]'s assaultive and threatening behavior which was not adequately taken into consideration by the calculation of [Mr. Boling]'s guideline range." *Id*. (record citation omitted; alterations in original).[2]

---

[2] The defendants point out that "Plaintiff has litigated this claim in almost too many other cases to count throughout the Country," Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Defs.' Reply") at 5, ECF No. 18, noting, in addition to the Tenth Circuit case, the plaintiff's cases in *Boling v. Williamson*, 305 Fed. App'x 7, 8 (3d Cir. 2008) (citing *Boling v. Smith*, 277 Fed. App'x 174, 176 n.1. (3d Cir. 2008)), *Boling v. Rivera*, 2011 U.S. Dist. Lexis 143212 (D.S.C. Dec. 13, 2011) (surveying the plaintiff's habeas filings in different jurisdictions since 2004 and dismissing the case "as an abuse of the writ")), Defs.' Mem. at 4 n.4, and *Boling-Bey v. United States Parole Comm'n,* 2006 U.S.

**B. The Instant Lawsuit**

The plaintiff filed this civil action in October 2015 against the following individuals in their individual and official capacities: Pamela Posch and Helen H. Krapels, both identified as "Gen. Counsel, USPC"; Steve Husk, Rob Haworth, Kathleen A. Piner and Jeffery Kosbar, all identified as "USPC Examiner"; and Michael Gray, identified as "BOP-Lev. Worth Case Man." Compl. at 7 (Caption).[3] The plaintiff alleges that the individual defendants "each knowingly and intentionally conspired together to violate [his] Fifth, Fourteenth, and Eighth Amendment Constitutional Rights in violation of 42 U.S.C. Section 1985(3) [and] Section 1986[,]" as well as "18 U.S.C. [§] 241 and 242[.]" Compl. at 5.

In addition, the plaintiff accuses Examiner Kosbar of carrying out "a fraudulent scheme" when he allegedly introduced at the parole reconsideration hearing conducted in July 2004 "an audio tape taken the morning of the hearing by Plaintiff's wife." Compl. at 3-4. After the plaintiff objected to Kosbar's use of "the phony tape taken the day of the hearing," he claims that Kosbar postponed the hearing. *Id*. at 4. Four months later, in November 2004, Examiner Haworth allegedly "illegally conducted a hearing without Plaintiff present and Ordered that [he] do a 15 year reconsideration pursuant to 28 U.S.C. 2.28(f) § 2.12(b) until 2018 with interim hearings." *Id*. The plaintiff accuses the defendants generally of "fraud, fraudulent concealment, forgery, falsifying evidence, perjury, [and] obstruction of justice." Compl. at 25. He seeks, among other equitable relief, "to be placed on the next parole docket," and compensatory damages totaling $50,000,000. *Id*. at 24-27.

---

Dist. Lexis 21038 (D.D.C. 2006) (transferring Plaintiff's habeas action alleging the identical claim raised here against the same Defendants to the District of Kansas), Defs.' Mem. at 4 n.5.

[3] The defendants indicate that "that Defendant Posch employment with the USPC ended in approximately 2006; Defendant Haworth in 2010; Defendant Pinner in 2007; Defendant Kostbar in 2008; and Michael Green in approximately 2004." Defs.' Reply at 4 n.4.

## II. APPLICABLE LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

To survive a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of demonstrating the court's subject-matter jurisdiction over the claims asserted. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Indeed, federal courts are "forbidden . . . from acting beyond our authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and, therefore, have "an affirmative obligation 'to consider whether the constitutional and statutory authority exist for us to hear each dispute,'" *James Madison Ltd. ex rel. Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992)). Absent subject matter jurisdiction over a case, the court must dismiss it. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506-07 (2006); Fed. R. Civ. P. 12(h)(3) (requiring dismissal of action "at any time" the court determines it lacks subject matter jurisdiction).

When considering a motion to dismiss under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations contained in the complaint and "'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged' and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). The court need not accept inferences drawn by the plaintiff, however, if those inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

Moreover, in evaluating subject matter jurisdiction, the court "may consider materials outside the pleadings." *Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016); *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005); *Herbert*, 974 F.2d at 197 (in disposing of motion to dismiss for lack of subject matter jurisdiction, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.").

Where, as here, a defendant files a motion to dismiss under both Rule 12(b)(1) and Rule 12(b)(6), the Rule 12(b)(1) grounds for dismissal are examined first "as subject matter jurisdiction presents a threshold question." *El Paso Natural Gas Co. v. United States*, 750 F.3d 863, 874 (D.C. Cir. 2014) (citing *Kim v. United States*, 632 F.3d 713, 715 (D.C. Cir. 2011) and *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)); *see also Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 64 (D.D.C. 2011) (noting that "court must first examine the Rule 12(b)(1) challenges" because a dismissal for lack of subject matter jurisdiction may render "the [other] accompanying defenses and objections [ ] moot[.]") (citations and internal quotation marks omitted).

**B. Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, ⸺ U.S. ⸺, 134 S.Ct. 2056, 2067 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible when the plaintiff pleads factual content that is more than "'merely consistent with' a defendant's liability," but "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007)); *see also Rudder v.*

*Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). In considering a motion to dismiss for failure to plead a claim on which relief can be granted, the court must consider the complaint in its entirety, accepting all factual allegations in the complaint as true, even if doubtful in fact, and construe all reasonable inferences in favor of the plaintiff. *Twombly*, 550 U.S. at 555; *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) ("We assume the truth of all well-pleaded factual allegations and construe reasonable inferences from those allegations in a plaintiff's favor." (citing *Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014))). The Court "need not, however, 'accept inferences drawn by [a] plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint.' " *Nurriddin*, 818 F.3d at 756 (alteration in original) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

When *res judicata* bars a claim, it is subject to dismissal under Rule 12(b)(6). *See RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 800 F. Supp. 2d 182, 189 (D.D.C. 2011) ("Res judicata is an affirmative defense that is usually pled in a defendant's answer, but courts have also allowed parties to assert the defense in a 12(b)(6) motion to dismiss." (citation omitted)). A defendant may raise the *res judicata* defense in a Rule 12(b)(6) motion "where [it] can be established from the face of the complaint, matters fairly incorporated within it, and matters susceptible to judicial notice." *Lewis v. DEA*, 777 F. Supp. 2d 151, 159 (D.D.C. 2011) (internal quotations and citations omitted). When ruling on a motion to dismiss under Rule 12(b)(6) on *res judicata* grounds, a court may take judicial notice of its own record, public records from other proceedings, and documents attached as exhibits or incorporated by reference in the complaint, including administrative complaints and orders. *See Laughlin v. Holder*, 923 F. Supp. 2d 204, 209 (D.D.C. 2013) (taking judicial notice of documents attached to or incorporated into the complaint, including administrative complaints and documents); *Hemphill*

*v. Kimberly–Clark Corp.*, 605 F. Supp. 2d 183, 186 (D.D.C. 2009) (taking judicial notice of public records from other proceedings (citation omitted)); *Sieverding v. U.S. Dep't of Justice*, 847 F. Supp. 2d 75, 81 (D.D.C. 2012) (taking judicial notice of a court's own records (citation omitted)).

### III. DISCUSSION

The defendants contend that the plaintiff's claims should be dismissed on the grounds, *inter alia*, of sovereign immunity, *res judicata*, and lack of personal jurisdiction. Mem. of Pts. & Auth. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem."), at 9-15, ECF No. 14. These defense arguments are discussed *seriatim*.

#### A. Sovereign Immunity

Sovereign immunity bars lawsuits against the United States, its agencies and its employees sued in their official capacities, absent an unambiguous waiver by the federal government. *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government [from suit] . . . ."); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (noting that suit against a government official in his official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent," such that "an official capacity suit is, in all respects other than name . . . a suit against the entity"); *Kim v. United States*, 632 F.3d 713, 715 (D.C. Cir. 2011) (holding that "no *Bivens* claim is available against [IRS employees] in their official capacities . . . ."); *Perkins v. Ashcroft*, 275 Fed. App'x. 17 (D.C. Cir. 2008) ("to the extent appellant was attempting to sue the former Attorney General in his official capacity, the action is barred by sovereign immunity"). This means that a waiver of sovereign immunity "must be unequivocally

expressed in statutory text, and [it cannot] be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted).

In his complaint, the plaintiff invokes the Constitution, provisions of the Civil Rights Act, and two federal criminal statutes, *see* Compl. at 5, as the legal basis for seeking compensatory monetary damages from the Commission and the named government officials. Yet, none of these laws relied on by the plaintiff provides a waiver of sovereign immunity for the plaintiff's claims for monetary relief against the Commission and the individual defendants in their official capacity.

First, the law is well established that Congress has not waived the United States' immunity with respect to tort claims arising under the Constitution. *Meyer*, 510 U.S. at 478 ("the United States simply has not rendered itself liable … for constitutional tort claims"). Second, "§ 1985 does not waive the federal government's sovereign immunity, so federal employees acting in their official capacities are immune from liability for alleged violations of § 1985," and any other provision of the Civil Rights Act. *Roum v. Bush*, 461 F. Supp. 2d 40, 46 (D.D.C. 2006) (citing *U.S. v. Timmons*, 672 F.2d 1373, 1380 (11th Cir. 1982) (other citation omitted)); *see also In re Rodriguez*, 2005 U.S. App. LEXIS 22400 (D.C. Cir. Oct. 14, 2005) (holding that Congress did not "waive the United States's sovereign immunity with respect to [plaintiff's] . . . statutory civil rights claims" under 42 U.S.C. §§ 1985(3) and 1986); *Davis v. U.S. Dep't of Justice*, 204 F.3d 723, 726 (7th Cir. 2000) ("Sovereign immunity . . . bars §§ 1985(3) and 1986 suits brought against the United States and its officers acting in their official capacity."). Third, the criminal statutes the plaintiff cites, 18 U.S.C. §§ 241 and 242, do not provide a private cause of action. *See Jackson v. Donovan*, 856 F. Supp. 2d 147, 149 (D.D.C. 2012) ("Plaintiff's claim of a criminal conspiracy fails because '18 U.S.C. § 241 is a criminal statute that provides no

basis for an individual to bring a private, civil action' ") (quoting *Alexander v. Wash. Gas Light Co.*, 481 F. Supp. 2d 16, 32 (D.D.C. 2006)); *Rockefeller v. U.S. Court of Appeals Office, for Tenth Circuit Judges*, 248 F. Supp. 2d 17, 23 (D.D.C. 2003) ("[T]he plaintiff is precluded from asserting any claims pursuant to 18 U.S.C. §§ 242 and 371 because, as criminal statutes, they do not convey a private right of action."). Thus, the defendants are correct that, under Federal Rule of Civil Procedure 12(b)(1), these claims must be dismissed for lack of subject matter jurisdiction since the United States has not waived its sovereign immunity. *See* Defs.' Mem. at 9-10.

The plaintiff's official-capacity conspiracy claim predicated on alleged fraud and other deceitful acts fares no better. Although Congress has waived the United States' immunity for certain torts under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, the waiver applies only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The FTCA does not authorize the plaintiff's claim, however, since "[u]nder both federal and District of Columbia law, civil conspiracy is not actionable in and of itself. Rather, its purpose is to serve as a device through which vicarious liability for the underlying wrong may be imposed upon all who are a party to it, where the requisite agreement exists among them." *Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1493 (D.C. Cir. 1989) (citations omitted). This is consistent with the "important civil conspiracy principle [ ] that no conspiracy can exist without 'some underlying tortious act.' " *Pencheng Si v. Laogai Research Found.*, 71 F. Supp. 3d 73, 89 (D.D.C. 2014) (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)). The underlying tortious acts alleged here involve fraud and deception, but the FTCA expressly "exempts fraud and misrepresentation from the general waiver of sovereign immunity."

*Maxberry v. Dep't of the Army, Bd. of Correction of Military Records*, 952 F. Supp. 2d 48, 52 (D.D.C. 2013) (citing 28 U.S.C. § 2680(h) (other citation omitted)).

Accordingly, as to the claims for monetary damages against the Commission and the individual defendants in their official capacity, the defendants' motion to dismiss on sovereign immunity grounds must be granted.

### B. Failure to State a Claim

Construed liberally, the plaintiff also seeks monetary damages from the individual defendants in their personal capacities, as well as declaratory and injunctive relief, all of which claims the defendants contend must be dismissed for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6). Defs.' Mem. at 13-20. Again, the Court agrees, for the reasons explained below.

#### 1. The Plaintiff's Claims Are Barred By Res Judicata

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.' " *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Claim preclusion "forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.' " *Id*. (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). At the same time, issue preclusion, which was "once known as 'collateral estoppel' and 'direct estoppel,' " bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id*. at 892 & n.5 (internal citations and quotation marks omitted); *see also U.S. Postal Serv. v. Am. Postal Workers Union*, 553 F.3d 686, 696 (D.C. Cir. 2009) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation

of the issue in a suit on a different cause of action involving a party to the first case." (internal quotation marks and citation omitted)). Thus, " '[r]es judicata . . . bars relitigation not only of matters determined in a previous litigation but also ones a party could have raised.' " *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 491 (D.C. Cir. 2009) (quoting *NRDC v. Thomas*, 838 F.2d 1224, 1252 (D.C. Cir. 1988)).

The doctrine of *res judicata* serves to "protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.' " *Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34, 41 (D.C. Cir. 2015) (brackets in original) (quoting *Taylor*, 553 U.S. at 892 (quoting *Montana v. United States*, 440 U.S. 147, 153-54 (1979)). "The objective of the doctrine of issue preclusion . . . is judicial finality; it fulfills 'the purpose for which civil courts had been established, the conclusive resolution of disputes within their jurisdiction.' " *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (quoting *Kremer v. Chem. Constr. Corp*. 456 U.S. 461, 467 n.6 (1982)).

The D.C. Circuit has established a three-part standard "for establishing the preclusive effect of a prior holding." *Yamaha Corp. of Am.*, 961 F.2d at 254.

> First, the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case. Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case. . . . Third, preclusion in the second case must not work a basic unfairness to the party bound by the first determination. An example of such unfairness would be when the losing party clearly lacked any incentive to litigate the point in the first trial, but the stakes of the second trial are of a vastly greater magnitude.

*Id*. (citations omitted). "Significantly for present purposes, courts regularly find that the resolution of a constitutional claim [within] the context of a petition for a writ of habeas corpus can have a preclusive effect on a subsequent section 1983 action that raises the same

13

constitutional claim." *Morgan v. United States Parole Comm'n*, No. 14-cv-0770, 2016 WL 1312001, at *4 (D.D.C. Apr. 4, 2016) (citing *Wilson v. Fulwood*, 772 F. Supp. 2d 246, 264 (D.D.C. 2011)).

All three requirements are satisfied here and preclude the plaintiff's claims. Since the plaintiff filed his prior habeas petition while incarcerated at the United States Penitentiary in Leavenworth, Kansas, *see Boling v. Rivera*, 2011 WL 6182124, at *6 n.11 (D.S.C. Dec. 13, 2011), the Tenth Circuit and the district court in Kansas were "court[s] of competent jurisdiction" to adjudicate the petition. *See Rooney v. Sec'y of Army*, 405 F.3d 1029, 1032 (D.C. Cir. 2005) (habeas "jurisdiction is proper only in the district in which the immediate . . . custodian is located") (internal citations and quotation marks omitted)). Those courts addressed the merits of the same issues surrounding the Commission's 2005 decision that the plaintiff raises here.

The Tenth Circuit identified the claims as arising from the Commission's January 5, 2005 Notice of Action, "which extended Mr. Boling's parole reconsideration date to December 2018" and "voided the December 2003 Notice of Action." *Boling*, 261 Fed. App'x at 136; *see id*. at 137 (concluding that "Mr. Boling's claims effectively attack the January 2005 Notice of Action, even if they do not explicitly refer to it"). The court then proceeded to address the merits of the plaintiff's claims:

> First, . . . that the Commission's application of D.C. law in effect at the time of his parole revocation (as opposed to the time at which he committed his crimes) violated the Ex Post Facto Clause of the United States Constitution. Second, . . . that the Commission's upward departure from its own guidelines in setting his parole reconsideration date violated his right to due process of law. Third, . . . that the Commission erred in relying on the same factors to establish his guidelines range and to depart from that range.

*Boling*, 261 Fed. App'x at 137.

With respect to the *ex post facto* claim, the Tenth Circuit agreed with the district court that the plaintiff had failed "'to demonstrate that the Commission's application of [its own] guidelines subjected [him] to any significant risk of prolonging his incarceration.'" *Id*. (record citation omitted). With respect to the due process claim, the Tenth Circuit held, as did the district court, that the plaintiff had provided "no legal support" for his argument that the Commission had erroneously considered "conduct that did not result in a criminal conviction" to support the upward departure. *Id*. at 138. Finally, the Tenth Circuit rejected the third claim alleging "double counting" and agreed with the district court "that, in this case, '[t]he Commission departed from its guidelines based on the extent, nature, repetition, and timing of [Mr. Boling]'s assaultive and threatening behavior which was not adequately taken into consideration by the calculation of [Mr. Boling]'s guideline range." *Id*. (record citation omitted; alterations in original).

The sheer number of opportunities that the plaintiff has had to litigate the issues at hand undermines any notion that preclusion at this juncture would "work a basic unfairness." [4] *Yamaha Corp. of Am.*, 961 F.2d at 254. Therefore, the defendants' motion to dismiss the plaintiff's claims for equitable relief on *res judicata* grounds is granted.

---

[4] In 2016, while addressing yet another of the plaintiff's attempts for review through a motion under Federal Rule of Civil Procedure Rule 60(b), the Tenth Circuit rejected the plaintiff's argument that the Supreme Court's decision in *Peugh v. United States*, — U.S. —, 133 S.Ct. 2072, 2078 (2013), "changed the law, rendering our decision incorrect and the district court's decision void." *Boling v. Maye*, No. 16-3192, 2016 WL 6087650, at *1 (10th Cir. Oct. 18, 2016). The Tenth Circuit explained: "On the contrary, [*Peugh*] endorsed the Supreme Court precedent on which our prior decision relied. [It] repeated its already existing standard, stating that when determining whether there has been an Ex Post Facto Clause violation, '[t]he relevant question is whether the change in law creates a 'sufficient' or 'significant' risk of increasing the punishment for a given crime.'" *Id*. (quoting *Peugh* at 2083 n.4) (other citations omitted).

15

## 2. The Plaintiff's Personal-Capacity Claims for Monetary Relief

Monetary relief is not available in habeas corpus proceedings and, consequently, resolution of the plaintiff's prior habeas petition does not appear to have preclusive effect with regard to his claims, under several provisions of the Civil Rights Act and certain criminal statutes, for damages against the named defendants in their personal capacities. Nevertheless, these claims are simply untenable.

In the form complaint filed under 42 U.S.C. § 1983, the plaintiff alleges that the individual defendants "each knowingly and intentionally conspired together to violate [his] Fifth, Fourteenth, and Eighth Amendment Constitutional Rights, in violation of 42 U.S.C. § 1985(3) [and] § 1986[,]" as well as 18 U.S.C. § 241 and 242[.]" Compl. at 5. The defendants argue correctly that no claim has been stated under § 1985 because the plaintiff has not pled any facts establishing that he was discriminated against on the basis of his race or some other recognized protected class. Defs.' Mem. at 19-20 (citing *Melton v. D.C.*, 85 F. Supp. 3d 183, 195 (D.D.C. 2015) and *Bush v. Butler*, 521 F. Supp. 2d 63, 67-68 (D. D.C. 2007)); *see Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (holding that under § 1985(3) "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action"); *Hoai v. Vo*, 935 F.2d 308, 314 (D.C. Cir. 1991) ("The scope of section 1985(3) is limited . . . by the condition that such conspiracies be 'motivated by some class-based, invidiously discriminatory animus.'") (quoting *Hobson v. Wilson*, 737 F.2d 1, 14 (D.C. Cir. 1984)). Further, "[s]ince § 1986 imposes liability upon a person who 'neglects or refuses' to prevent a wrong under § 1985, [the] plaintiff's § 1986 claim also fails." *Jackson*, 856 F. Supp. 2d at 150. Moreover, as already explained *supra* in Part III.A., the cited criminal statutes do not

provide a private cause of action. This leaves § 1983, to which the Court now turns but rejects as a source of liability.

Section 1983 creates a private right of action against a "person" who is alleged to have violated the plaintiff's constitutional rights while acting "under color of . . . any State or Territory or the District of Columbia." 42 U.S.C. § 1983. Such claims are properly brought against the person in his or her individual capacity. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). The defendants argue that they are not subject to suit in their personal capacity under § 1983 because they are not state actors. *See* Defs.' Mem. at 18-19. They are mistaken. The D.C. Circuit has held that while the Commission itself is not subject to suit under § 1983, "a cause of action . . . will lie against the individual members of the Commission when acting pursuant to the Revitalization Act § 11231, 111 Stat. at 745." *Settles*, 429 F.3d at 1104 (citing *Fletcher v. District of Columbia*, 370 F.3d 1223, 1227 (D.C. Cir. 2004)).

The simple fact here, however, is that the Tenth Circuit has ruled against the plaintiff on the merits of his constitutional and statutory claims, and that ruling has preclusive effect. Therefore, no basis exists either in law or in fact to support an award of monetary damages under § 1983, and this is the textbook definition of a frivolous claim. *See Abiodun v. Holder*, 86 F. Supp. 3d 11, 13 (D.D.C. 2015) ("A complaint is 'frivolous where it lacks an arguable basis either in law or in fact.'") (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). Hence, the Court will dismiss the plaintiff's personal-capacity claims pursuant to 28 U.S.C. § 1915.[5]

---

[5] The defendants argue correctly that the plaintiff has failed to carry his burden of establishing this Court's personal jurisdiction over the individually named defendants in their personal capacities, *see* Defs.' Mem. at 11-12; U.S. Marshal's returns of service, ECF Nos. 7, 8, 9 (showing service of process upon all defendants at the Commission's address), since personal jurisdiction over government officials must be based on their personal contacts with the forum

## IV. CONCLUSION

For the foregoing reasons, the Court concludes: (1) that sovereign immunity bars the plaintiff's claims against the United States, its agency and the individual defendants in their official capacities for monetary relief; (2) that collateral estoppel precludes the plaintiff's claims for equitable relief; and (3) that the plaintiff's personal-capacity claims for monetary relief are frivolous. Accordingly, the defendants' motion to dismiss is granted.

A separate Order consistent with this Memorandum Opinion will be filed contemporaneously.

/s/ *Beryl A. Howell*
CHIEF JUDGE

DATE: November 30, 2017

---

other than merely using a District of Columbia mailing address for the agency, *see Pollack v. Meese*, 737 F. Supp. 663, 666 (D. D.C. 1990) (concluding that the Court had no basis for asserting personal jurisdiction over the warden of a BOP facility in Springfield, Missouri because he "surely does not transact any business in the District of Columbia"); *Akers v. Watts*, 740 F.Supp.2d 83, 92 (D.D.C. 2010) ("The mere fact that they are federal government employees, affiliated with agencies headquartered or maintaining offices in this district, does not render them subject to suit in their individual capacities in the District of Columbia"); *Gardner v. United States*, 1999 U.S. Dist. Lexis 2195 *30 (D.D.C. 1999) (dismissing the plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(2) because the defendants were IRS employees located outside the District and the plaintiff had not demonstrated that any of the long-arm statute's provisions applied to them). Even if jurisdictional discovery could cure this defect in the plaintiff's claims, *see Edmond v. United States Postal Serv. Gen. Counsel*, 949 F.2d 415, 425 (D.C. Cir. 1991) (finding abuse of discretion in denial of jurisdictional discovery to establish personal jurisdiction), the claims would remain subject to dismissal. Indeed, in an *in forma pauperis* proceeding such as this, a complaint should be dismissed as soon as feasible upon determining that it is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from an immune defendant. *See* 28 U.S.C. § 1915(e)(2) and § 1915A (directly applicable to this prisoner action).